2024R00427/KMR/JRE



## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon.  Judge Madeline Cox Arleo |
|  | : |  |
| v. | : | Crim. No.   2:24–cr–00407 |
|  | : |  |
| TIMOTHY BOGEN, | : | 18 U.S.C. § 1349 |
| KEVIN FRINK, | : |  |
| DION JACOB, | : |  |
| QUINTON JOHNSON, | : |  |
| DAVID LONERGAN, | : |  |
| DAVID MCBRIEN, | : |  |
| RODOLFO RIVERA, | : |  |
| GREGORY RICHARDSON, | : |  |
| MICHAEL TOAL, and | : |  |
| DAMANY WALKER | : |  |

## <u>I N D I C T M E N T</u>

The Grand Jury in and for the District of New Jersey, sitting at Newark,

charges as follows:

### (Conspiracy to Commit Health Care Fraud)

1.      At all times relevant to this Indictment:

a.      Defendants TIMOTHY BOGEN, KEVIN FRINK, DION JACOB,

QUINTON JOHNSON, DAVID LONERGAN, DAVID MCBRIEN, GREGORY

RICHARDSON, RODOLFO RIVERA, MICHAEL TOAL, and DAMANY WALKER

were employees of the National Railroad Passenger Corporation ("Amtrak").

b.      Defendant TIMOTHY BOGEN was a resident of Hamden,

Connecticut.

c.      Defendant KEVIN FRINK was a resident of Willingboro, New

Jersey.

d.      Defendant DION JACOB was a resident of Brooklyn, New York.

e.      Defendant QUINTON JOHNSON was a resident of Irvington, New Jersey.

f.      Defendant DAVID LONERGAN was a resident of Rockaway Park, New York.

g.      Defendant DAVID MCBRIEN was a resident of Levittown, Pennsylvania.

h.      Defendant GREGORY RICHARDSON was a resident of Roosevelt, New York.

i.      Defendant RODOLFO RIVERA was a resident of Clayton, Delaware.

j.      Defendant MICHAEL TOAL was a resident of Hazlet, New Jersey.

k.      Defendant DAMANY WALKER was a resident of Irvington, New Jersey.

l.      Michael DeNicola was a resident of New York and Florida and a licensed Doctor of Podiatric Medicine ("podiatrist"). DeNicola was a co-conspirator not charged in this Indictment.

m.      Punson Figueroa, a/k/a "Susie," was a resident of New York and an acupuncturist. Figueroa was a co-conspirator not charged in this Indictment. Figueroa owned several businesses that provided acupuncture and other services in New York, New York.

2

n.    Devon Burt was a resident of Pennsylvania and an Amtrak employee. Burt was a co-conspirator not charged in this Indictment.

o.    Hallum Gelzer was a resident of New Jersey and a co-conspirator not charged in this Indictment.

p.    "Cash Application 1" was a money transfer application used to transfer funds between bank accounts.

## Background

2.    Amtrak was a passenger railroad service that operated a nationwide rail network.

3.    Amtrak provided its employees with a health care benefit plan (the "Amtrak health care plan"), which insured participating Amtrak employees who paid premiums through monthly payroll deductions (the "Amtrak health care plan participants"). The Amtrak health care plan is a "health care benefit program," as defined by 18 U.S.C. § 24(b).

4.    The Amtrak health care plan reimbursed providers of medical services, including physicians and medical clinics (collectively, "providers"), that treated Amtrak health care plan participants.

5.    The Amtrak health care plan required providers to submit claim forms to receive reimbursement for medical services provided to Amtrak health care plan participants. Among other information, providers were required to include in the claim forms: (1) the Amtrak health care plan participant's name and ID number; (2) the type of service provided; (3) the date the service was provided; (4) the charge

for the service; (5) the diagnosis; and (6) the provider's name and/or identification number.

6.     The Amtrak health care plan paid only medically necessary claims for patients covered under the health care plan. To encourage patients to receive cost-effective and medically necessary treatments, the Amtrak health care plan required participants to pay co-insurance, co-payments, and deductibles.

7.     Defendants BOGEN, FRINK, JACOB, JOHNSON, LONERGAN, MCBRIEN, RICHARDSON, RIVERA, TOAL, and WALKER were participants in the Amtrak health care plan.

## The Conspiracy

8.     From in or around January 2019 through in or around June 2022, in the District of New Jersey, and elsewhere, defendants

**TIMOTHY BOGEN,**
**KEVIN FRINK,**
**DION JACOB,**
**QUINTON JOHNSON,**
**DAVID LONERGAN,**
**DAVID MCBRIEN,**
**GREGORY RICHARDSON,**
**RODOLFO RIVERA,**
**MICHAEL TOAL, and**
**DAMANY WALKER**

did knowingly and intentionally conspire and agree with one another and with DeNicola, Burt, Figueroa, Gelzer, and others to knowingly and willfully execute a scheme and artifice to defraud the National Railroad Passenger Corporation (Amtrak) health care plan, a health care benefit program as defined under Title 18,

4

United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

## Goal of the Conspiracy

9.      The goal of the conspiracy was for Defendants and their co-conspirators to profit by submitting false and fraudulent claims to the Amtrak health care plan for services that were never provided and that were medically unnecessary.

## Manner and Means of the Conspiracy

10.     It was part of the conspiracy that:

a.      Defendants BOGEN, FRINK, JACOB, JOHNSON, LONERGAN, MCBRIEN, RICHARDSON, RIVERA, TOAL, and WALKER agreed to participate in a scheme to bill the Amtrak health care plan for false and fraudulent claims for services that were not provided and services that were medically unnecessary.

b.      Specifically, Defendants agreed to allow co-conspirator health care providers, including Figueroa and DeNicola, to use Defendants' personal and insurance information—and, in some cases, their dependents' personal and insurance information—to fraudulently bill the Amtrak health care plan for services that were not rendered and were medically unnecessary.

c.      Co-conspirator health care providers, including DeNicola and Figueroa, paid Defendants bribes and kickbacks, including cash, money orders, and electronic payments, in return for Defendants' permitting the health care providers

5

to use their insurance and personal information to bill for medical services that were not rendered or were not necessary.

   d. For example, on or about September 28, 2021, Defendants JACOB, JOHNSON, LONERGAN, MCBRIEN, RICHARDSON, and WALKER each met separately in person with DeNicola and each accepted money orders worth hundreds of dollars from DeNicola in return for their participation in the scheme. Additionally, on or about November 22, 2021, Defendants BOGEN, FRINK, JOHNSON, LONERGAN, MCBRIEN, RICHARDSON, and WALKER each met separately in person with DeNicola and each accepted money orders worth hundreds of dollars from DeNicola in return for their participation in the scheme.

   e. Defendants communicated with co-conspirator health care providers, including Figueroa and DeNicola, via telephone and text message discussing the scheme.  For example:

    i. MCBRIEN regularly texted Figueroa to ask about the payment schedule.  For example, on or about December 21, 2020, MCBRIEN texted Figueroa: "Remember the gifts we talked about, is that this week?" Figueroa generally paid MCBRIEN toward the end of the month, and on or about December 3, 2021, May 9, 2022, and June 15, 2022, MCBRIEN texted Figueroa to ask for an early "envelope" using an envelope emoji.

    ii. On or about July 15, 2021, Figueroa texted RICHARDSON "You come to treatment tomorrow ~ $will do end of this month 500 if acu."[1] On or

---

[1] The text messages referenced in this Indictment are reproduced as they appeared in the original, including any textual or grammatical errors.

about October 21, 2021, RICHARDSON texted Figueroa his Cash Application 1 information. On the same date, Figueroa sent RICHARDSON $500 using Cash Application 1. RICHARDSON texted Figueroa "thumbs up" and "smiley face" emojis with the words "thank u."

iii.     On or about December 1, 2021, RIVERA texted Figueroa: "Hi Susie question I know I'm not getting nothing this month as well from you or [co-conspirator]. Is there a way I can get something. Since work is slow and Christmas is getting close if no than that's fine." Figueroa responded: "I give you total this year $7600." Figueroa added that she was "over paying [RIVERA] $1350" given that Figueroa had only billed the Amtrak health care program using RIVERA's insurance information for eight of the months in 2021.

iv.     On or about March 22, 2022, Figueroa and JACOB had the following text message exchange:

| | |
|---|---|
| Figueroa: | Our biller mistakenly biller for you 5 service date I just found that. |
| Figueroa: | I do 300 some how |
| Figueroa: | How do you like? |
| JACOB: | U can [Cash Application 1] my # |

On or about this same date, Figueroa sent JACOB a total of $510 using Cash Application 1.

v.     On or about May 2, 2022, TOAL texted Figueroa referencing a cash payment that she had just made. TOAL wrote: "Did you mean to give me 850 ? It's no big deal normally you give 1,000 but maybe it was a mistake?" Figueroa responded that she was sorry and had not counted correctly.

f.      Each Defendant knew that, as part of the scheme, the co-conspirator health care providers submitted claims for services that were never provided and that were medically unnecessary.  At times, each of the Defendants would sign paperwork that they knew would be used by the providers to submit false claims.  For example, Defendants signed a "sign-in sheet" multiple times, with dates to be filled in later by the provider.  For example:

i.      On or about Saturday, August 17, 2019, Figueroa texted RIVERA to ask if he was coming to the office.  RIVERA responded that he would need to reschedule.  Two days later, RIVERA texted Figueroa, "And for Saturday I can sign the sheet like if I came in.  Since I had a hard time coming in.  So you get paid for Saturday at least."  Thereafter, Figueroa submitted a claim to the Amtrak health care plan falsely indicating that on August 17, 2019, RIVERA had received acupuncture services.  As a result of the false claim, the Amtrak health care plan paid approximately $259.

ii.     On or about September 17, 2020, LONERGAN texted Figueroa: "Hi..im senfing my friend [Amtrak Employee 1] to see you. .he will sign for you like I did maybe you can give him christmas present."   Later that day, LONERGAN texted Figueroa again: "We are here..[Amtrak Employee 1] is gonna get acvupuncture or massage..so basically he wants to help you if you help him .he will sign what you want him to sign[.]"  LONERGAN then added:  "[Amtrak Employee 1] is cool with everything."

       iii.      On or about November 1, 2021, TOAL texted Figueroa: "I'm not going to be able to get any treatment today but you can still put my name down on the sheet if you like."

       iv.      On or about September 28, 2021, MCBRIEN, WALKER, JOHNSON, JACOB, and LONERGAN met with DeNicola in person and signed a "sign-in" sheet, without dating the signatures.  WALKER, JOHNSON, and JACOB signed multiple times.

       v.      On or about November 22, 2021, LONERGAN met with DeNicola in person but refused to sign the "sign-in" sheet until DeNicola caught up on payments owed to LONERGAN.

       g.      Defendants also knew that, to advance the scheme, the co-conspirator health care providers submitted claims to the Amtrak health care plan for purported "dates of service" that were backdated and did not occur.

       i.      For example, on or about June 11, 2021, RIVERA provided Figueroa with personal information for two Amtrak employees that he recruited into the scheme, Amtrak Employee 2 and Amtrak Employee 3.  Figueroa then texted RIVERA: "Tell them we will billing from May ~ if insurance company asking thell [*sic*] them say yes please Ny [prayer emoji]." RIVERA responded: "[Amtrak Employee 2 and Amtrak Employee 3] are fine with you back billing as you was saying.  They have not received acupuncture or physical therapy for a few years now."

       ii.      Thereafter, Figueroa submitted claims to the Amtrak health care plan falsely indicating that Amtrak Employee 2 had received physical

therapy and acupuncture services on approximately 27 purported dates of service in March, April, May, and June 2021 prior to June 11. As a result of the false claims, the Amtrak health care plan paid approximately $22,247.

iii.     Figueroa also submitted claims to the Amtrak health care plan falsely indicating that Amtrak Employee 3 had received physical therapy and acupuncture services on approximately 29 purported dates of service in March, April, May, and June 2021 prior to June 11. As a result of these claims, the Amtrak health care plan paid approximately $26,122.

iv.     On or about September 1, 2021, FRINK sent Figueroa insurance information regarding Amtrak Employee 4, an employee that FRINK had recruited to the scheme.  Figueroa texted FRINK: "When I can put service date billing?  Few month back up he wants or I do future billing for September?"  FRINK responded: "Few months back."

v.     Thereafter, Figueroa submitted claims to the Amtrak health care plan falsely indicating that Amtrak Employee 4 had received physical therapy and acupuncture services on 25 purported dates of service in June, July, and August 2021.  As a result of the false claims, the Amtrak health care plan paid approximately $19,263.

vi.     On or about October 26, 2021, JOHNSON and Figueroa had the following text exchange:

Figueroa:  I just talked my billing team to bill you for acupuncture and PT sooner.
JOHNSON:  ok.. That's good!!  So maybe in the middle of Nov I can see you,

JOHNSON:  What do you think..

The text exchange continued:

Figueroa:  You say PT service date billing form October that's right?
JOHNSON:  What's PT?
JOHNSON:  Let me know, thank you
Figueroa:  Physical therapy
Figueroa:  We do acupuncture billing and PT billing together ~ if you go other place Acupuncture or PT or Chiropractor we cannot billing our office

The text exchange continued:

Figueroa:  Can you text me which month which date I can start billing Acupuncture and PT
Figueroa:  This must be clear you and me.. let me call my biller now asking them about your billing date
JOHNSON:  September Acupuncture
Figueroa:  You mean I can billing Acupuncture from September right?
Figueroa:  If yes.. thank you
JOHNSON:  Yes

vii.      Thereafter, on or about November 6, 2021, Figueroa submitted claims to the Amtrak health care plan falsely indicating that JOHNSON had received acupuncture on approximately eight dates in September 2021.  As a result of these claims, the Amtrak health care plan paid approximately $3,960.

viii.     On or about November 11, 2021, Figueroa texted JACOB and told him that Figueroa had stopped billing JACOB's insurance "because you give us notice for stop billing."  Thereafter, they had the following text exchange:

JACOB:  It's ok to bill me I'll still be on coverage for the next 3 months.
Figueroa:  If you have any changes?  Meaning if we can billing now more?
Figueroa::  Really? Sounds good

11

| | |
|---|---|
| Figueroa: | You sure we can do it? |
| Figueroa: | We can try then and I let you know how they paying. |
| JACOB: | Yes I'm sure . . . they put me on stress leave. |

       ix.      Thereafter, on or about November 27, 2021, Figueroa submitted claims to the Amtrak health care plan falsely indicating that JACOB had received acupuncture services on approximately eight dates in October 2021. As a result of these false claims, the Amtrak health care plan paid approximately $3,960.

       h.      The co-conspirator Amtrak employees also took steps to avoid scrutiny from the Amtrak health care plan by ensuring that the false claims did not conflict with dates where they actually received medical services or where they received medical services from other providers. For example:

       i.      On or about June 16, 2021, LONERGAN sent Figueroa a text message asking Figueroa not to bill for him on any Wednesdays, because he was actually receiving services from a chiropractor on Wednesdays. LONERGAN wrote: "I see your bill person billed all the way back to January" which, LONERGAN stated in the text messages, overlapped with when LONERGAN was receiving legitimate treatment from a chiropractor. LONERGAN wrote: "now there is probably a red flag up for January and Feb and march.. and April may jun. 6 months of billing and 3 months double care by you and her .. I will go through all the claims with you next time seeing I had 1 massage only since January and [LONERGAN's family member] was there once."

       ii.      Nevertheless, in May 2021, Figueroa submitted claims to the Amtrak health care plan falsely indicating that LONERGAN had received

acupuncture and physical therapy on approximately 38 dates in January, February, and March 2021.  As a result of these false claims, the Amtrak health care plan paid approximately $19,301.

   iii. On or about November 16, 2021, WALKER texted Figueroa: "Is it ok to go see a chiropractor since you not billing right now?"  Figueroa responded: "We been long time billing(10 months). . we don't want too warm up and taking few months break and no income for me.."  Figueroa then added: "Let me know if you plan to go any PT [physical therapy] then no good for you also I can't billing anymore and I can not give anything anymore darling."  WALKER responded "ok" and added "I might come in for another massage then."

   i. At times, Defendants received services from providers associated with the co-conspirator health care providers.  However, Defendants made no co-payments and frequently received services, such as massages, that bore no relation to the services that the co-conspirator health care providers billed to the Amtrak health care plan.  Defendants visited the co-conspirator health care providers primarily because the providers paid bribes and kickbacks, not because Defendants needed medical care from those providers.  For example:

   i. On or about April 23, 2021, BOGEN texted Figueroa: "Susie You and I had an appointment at 9:30 am . Not for treatment Your words 'I have something for you' I could have been home in Connecticut by now but I keep your 9:30 am meeting.  That's 4 /12 hours you wasted of my time!  Thanks so very much for that!!!"  At approximately 10:04 a.m., Figueroa responded that she would go

to the bank and then meet BOGEN, and when BOGEN replied that he planned to go home, Figueroa offered to pay him using Cash Application 1.  BOGEN responded that he had Cash Application 1 but instructed Figueroa by text message: "give Kevin Frink a envelope please."

      ii.      On or about July 15, 2021, Figueroa and defendant WALKER had the following text exchange:

> WALKER:    Hey suzie can I come in tomorrow
>
> Figueroa:    We do have spots for tomorrow 11 am. or after 2pm.
>
> Figueroa:    You need treatment when you come this time because you didn't come few weeks right?
>
> Figueroa:    Let me check over your $date..
>
> WALKER:    Right
>
> Figueroa:    Yours every month end the time..
>
> Figueroa:    You can come tomorrow for treatment
>
> Figueroa:    But we will do $is round end the month should be ok [smiling emoji] [prayer hands emoji] [heart emoji]
>
> WALKER:    Ok so I'll come end of the month then.

      iii.     Thereafter, on or about July 26, 2021, Figueroa submitted claims to the Amtrak health care plan falsely claiming that WALKER had received acupuncture on approximately five dates in July 2021.  As a result of these claims, the Amtrak health care plan paid approximately $1,350.

      iv.     On or about June 5, 2022, TOAL and Figueroa discussed TOAL's visits to Figueroa by text message.  TOAL wrote: "It's the payment from may that I am in need for not the treatment.  The treatment is just a perk."

14

      j.      Defendants and other co-conspirator Amtrak employees regularly discussed the scheme among themselves, including by text message.  For example:

      i.      On or about January 6, 2021, JOHNSON and Burt had the following text message exchange:

> JOHNSON:    I just left Dr. [Provider]
> Burt:          What he hit you with?
> JOHNSON:    400 don't tell anyone.

      ii.      On or about January 12, 2021, RIVERA texted Burt: "Hallum [Gelzer] said that he will bring a new idea to [Provider] about using our wife's and kids insurance and we will get extra paid."  Burt responded with a "thumbs up" emoji.

      k.      In addition to receiving bribes and kickbacks for their own participation in the scheme, Defendants also were paid bribes and kickbacks in exchange for recruiting additional Amtrak employees into the scheme.  For example:

      i.      On or about May 25, 2021, BOGEN texted Figueroa that he had a co-worker who was interested in coming in.  Figueroa responded: "Yes co-workers best."  She then stated: " I will thanks for you with $also yes."

      ii.      On or about November 12, 2021, RIVERA texted Figueroa: "Hey Susie just wanted to know if I'm getting a referral for having [Amtrak Employee 2's] wife in the system.  Since I'm not getting nothing for 3 months at least this will help me out."  Figueroa responded: "I can give referral about [Amtrak Employee 2's] wife."  In later text messages, Figueroa stated that she paid Rivera "$1500 referral" for recruiting the Amtrak employee and his wife.

iii.     On or about November 30, 2021, JACOB texted Figueroa asking if he would be receiving any kickbacks for that month.  Figueroa replied that she would not be paying JACOB kickbacks for that month because "we not bill you anymore long ago because insurance company doesn't want anymore paying," but added "I can do for referral one np."  JACOB responded: "Can we do [Cash Application 1]?"

iv.     TOAL recruited other Amtrak employees to the scheme, and on or about February 3, 2022, TOAL texted Figueroa: "Thank you again Susie I will try to bring some more people in I just need time to trust them."

l.     The co-conspirator Amtrak employees had access to their insurance claims data via a mobile application ("app") that they could access on their smartphones.  The conspirators used information from the app to monitor the co-conspirator providers' billing and to determine how much they were owed from certain co-conspirator health care providers, like DeNicola, who generally promised to pay the co-conspirator employees a percentage of the paid reimbursements. For example, on or about November 22, 2021, BOGEN met with DeNicola in person and stated that DeNicola owed BOGEN approximately $1600 based on what BOGEN reviewed in the app.

m.     Several of the conspirators resided in New Jersey, and certain of the conspirators communicated with one another via text message and telephone in furtherance of the scheme, while located in New Jersey.

n.      As a result of the false and fraudulent claims that Defendants and their co-conspirators caused to be submitted to the Amtrak health care plan, Amtrak paid reimbursements of at least approximately $11,054,831 to Figueroa, DeNicola, and other co-conspirator health care providers.  Defendants each received thousands of dollars in cash kickbacks from Figueroa, DeNicola, and other co-conspirator providers.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1.      Upon conviction of the Federal health care fraud offense charged in this Indictment, Defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the respective defendant obtained that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense charged in the Indictment.

## **SUBSTITUTE ASSETS PROVISION**

2.      If any of the forfeitable property described above, as a result of any act or omission of the defendants:

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with, a third party;

      (c)      has been placed beyond the jurisdiction of the Court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL

FOREPERSON

*Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney

18

CASE NUMBER: ___2:24–cr–00407 (MCA)

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

TIMOTHY BOGEN,
KEVIN FRINK,
DION JACOB,
QUINTON JOHNSON,
DAVID LONERGAN,
DAVID MCBRIEN,
RODOLFO RIVERA,
GREGORY RICHARDSON,
MICHAEL TOAL, and
DAMANY WALKER

INDICTMENT FOR

18 U.S.C. § 1349

A True Bill,

███████████████████

Foreperson

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

KATHERINE M. ROMANO
JESSICA R. ECKER
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
973-353-6095